# FLOWERS v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Case No. 83-2226

County Court, Orange County

January 18, 1984

## APPEARANCES OF COUNSEL

**Robert J. Felice** for plaintiff.

**Thomas G. Kane** for defendant.

## OPINION OF THE COURT

GEORGE A. SPRINKEL IV, County Judge.

THIS ACTION was tried before the Court on January 6, 1984. The sole issue presented for determination was whether or not State Farm Mutual Automobile Insurance Company was responsible for payment of a medical bill incurred by their insured, Plaintiff Gertrude Flowers, in undergoing a thermographic evaluation performed by Thermographic Medical Associates, Inc.

The Plaintiff presented her testimony as well as that of Harry Rein,

M.D., Joseph Uricchio, M.D., and (by deposition) William Silverman, D.O. The Defendant offered the deposition testimony of T. G. Hiebert, M.D., and Peritz Scheinberg, M.D.

The dispute arose out of a vehicular accident causing injuries to Gertrude Flowers which occurred on January 28, 1983. At that time, she was insured of Defendant, State Farm Mutual Automobile Insurance Company, having secured both personal injury protection (i.e., no-fault) and medical payments coverage.

Plaintiff sought treatment from her family physician, Dr. Willaim Silverman, primarily for injuries to her neck. Dr. Silverman referred his patient to Thermographic Medical Associates, Inc., for performance of a diagnostic procedure known as thermography in order to assist in the diagnosis and subsequent treatment of Gertrude Flowers' injuries.

Cervical and thoracic thermograms were performed on March 29, 1983, and a bill of $450.00 was submitted for this diagnostic procedure. Payment of the bill was refused by the Defendant on the basis that thermography was not reasonable and necessary in this particular case and that the Florida Motor Vehicle No-Fault Law did not contemplate payment for thermography since it was allegedly an experimental diagnostic test with little or no proven clinical value.

After considering the testimonial and documentary evidence presented as well as considering the candor and demeanor of those witnesses who testified in person before the Court, the Court finds for Plaintiff against the Defendant.

Due to the novelty of the issue presented, the extent and thoroughness of the medical evidence received and the Court's hope that this opinion may provide useful information to other potential litigants, the Court believes it appropriate to summarize the basis of this finding.

The Plaintiff's treating physician, Dr. William Silverman, testified that the thermography which he ordered was a necessary procedure in order to determine the existence of a subtle nerve injury or persistent soft tissue injury, to assist in explaining his patient's continuing complaints of pain and to assist in formulating a prognosis for her condition. The Court found Dr. Silverman's answers to questions posed by counsel for the Defendant to be forthright and reasonable and his testimony not to have been impeached. Of all the physicians who testified, the Court is impressed with the fact that Dr. Silverman was the only physician with the ultimate responsibility of treating the Plaintiff and hopefully effectuating improvement in her condition. For this reason, the Court believes that the opinion of a treating physician as to the reasonableness and necessity of a diagnostic procedure should

be accorded great weight provided the opinion is consonant with logic and reason, as in the instant case.

As previously noted, the Court had the benefit of the live testimony of Dr. Rein and Dr. Uricchio. That testimony, as well as the demonstrative aids utilized by Dr. Rein, were most helpful to the Court in resolving this dispute. The Court carefully assessed the candor and demeanor of these witnesses and found them to be forthright and credible. Dr. Rein is the medical director of Thermographic Medical Associates, Inc., the entity which performed the thermographic study on the Plaintiff, and Dr. Uricchio directs Central Florida Thermography, Inc. Both physicians are board certified in a specialized area of medicine, Dr. Rein in family practice and Dr. Uricchio in orthopedic surgery. The Court was impressed with the fact that both witnesses have educated themselves in the process of thermography by readings, personal study with leaders in the field of thermography, membership in organizations devoted to the field of thermography and its study and attendance at meetings concerned with the nature and use of thermography. Both witnesses have also published in the field of thermography, with Dr. Rein having authored a textbook devoted to the topic of thermography and its medical applications.

The testimony adduced established that electronic computerized thermography in a medical setting, such as involved in this case, is a recording of the infrared heat emissions from the human body. The procedure is of assistance in evaluating and demonstrating sensory nerve injury as well as other types of soft tissue pathology. The procedure has apparently had industrial and military usage for many years, and improving technology as well as advancing knowledge have resulted in its usage in an increasing number of medical settings for the aforementioned purposes over the past several years. The testimony of all of the medical witnesses established that an increasing body of research literature concerning thermography exists in the medical community.

Dr. Rein and Dr. Uricchio testified that thermography was being utilized in the Central Florida area by a number of medical, osteopathic and chiropractic physicians as well as by two of our large and well-respected hospital facilities, Florida Hospital, South and Orlando Regional Medical Center. The medical doctors in the community utilizing thermography, as well as those utilizing, studying and teaching the procedure throughout the country, come from a variety of disciplines including neurosurgery, neurology, orthopedic surgery, general surgery, radiology and family practice. The Court was impressed with the fact that the procedure is being utilized and taught at a

36

number of leading medical centers throughout the country including Johns Hopkins, Georgetown and the University of Missouri.

Both Dr. Rein and Dr. Uricchio testified that the results of medical thermography were generally recognized as reliable by those in the medical community familiar with the diagnostic procedure. They further testified that this procedure was a reasonably necessary procedure for Dr. Silverman to order on Gertrude Flowers in connection with his care and treatment of the patient. The Court accepts both of these opinions.

The Court has also carefully considered the testimony of Dr. Hiebert and Dr. Scheinberg. The Court was not impressed with the credibility of Dr. Hiebert. A number of responses to questions on cross-examination were evasive, argumentative or sarcastic. While Dr. Hiebert claimed to be better informed on thermography than anyone else in the country, he apparently has not chosen to share his knowledge in the professional literature and has apparently studiously avoided any contact with those individuals who belong to professional organizations devoted to the study and usage of thermography.

The Court was impressed with the educational and professional background of Dr. Scheinberg. Dr. Scheinberg, however, had relatively little personal knowledge concerning thermography. He readily acknowledged that he had never performed or even observed a thermographic examination. He further candidly acknowledged that the procedure was in clinical use by a number of physicians and hospitals in the State of Florida.

The testimony of Dr. Hiebert and Dr. Scheinberg did establish that thermography is not a universally accepted procedure in the medical community at this time. This fact, however, is of no avail to the Defendant.

The study of medicine and most other fields of human endeavor has taught a valuable lesson repeatedly: the more we learn, the more we realize how little we know. At the same time, however, it is apparently human nature to distrust what is new and not completely understood.

Nowhere in the Florida vehicle no-fault law, however, is a necessary medical service defined as one that is universally accepted. Indeed, if this were to be the standard, insureds would be denied the benefits of the most progressive medical care available.

With respect to the amount of the bill of Thermographic Medical Associates, Inc., the Court would simply note that Dr. Rein's testimony that the charge for the thermographic examination represented a

reasonable charge for like medical services in this community was not impeached. The Court accepts the opinion of Dr. Rein in this regard.

In summary, the Court finds that the thermographic examination performed on Gertrude Flowers was a reasonable and necessary diagnostic test as contemplated by the Florida Motor Vehicle No-Fault Law and payment of said bill is accordingly the responsibility of Defendant, State Farm Mutual Automobile Insurance Company, under the terms of the policy insuring Plaintiff, Gertrude Flowers. It is accordingly

ADJUDGED as follows:

1. That Plaintiff, Gertrude Flowers, recover from Defendant, State Farm Mutual Automobile Insurance Company, the sum of $450.00, for which let execution issue.

2. That jurisdiction is reserved for the purpose of taxation of the Plaintiff's costs and attorney's fees against Defendant.